**23-1119 (L), 23-1122, 23-1154**

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

◆◆◆

ELIZABETH SINES; SETH WISPELWEY; MARISSA BLAIR;
APRIL MUÑIZ; MARCUS MARTIN; JOHN DOE; NATALIE ROMERO;
CHELSEA ALVARADO; THOMAS BAKER,

*Plaintiffs-Appellees,*

—and—

TYLER MAGILL; HANNAH PEARCE,

*Plaintiffs,*

(*Caption continued on inside cover*)

—————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

---

## REPLY BRIEF OF PLAINTIFFS-APPELLEES/CROSS-APPELLANTS

---

RAYMOND P. TOLENTINO
KAPLAN HECKER & FINK LLP
1050 K Street, NW, Suite 1040
Washington, DC 20001
(212) 763-0883

DAVID E. MILLS
JOSHUA M. SIEGEL
CAITLIN B. MUNLEY
ROBBY L.R. SALDAÑA
KHARY J. ANDERSON
COOLEY LLP
1299 Pennsylvania Avenue, NW,
  Suite 700
Washington, DC 20004
(202) 842-7800

ALAN D. LEVINE
COOLEY LLP
55 Hudson Yards
New York, New York 10001
(212) 479-6000

ROBERTA A. KAPLAN
GABRIELLE E. TENZER
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

KAREN L. DUNN
JESSICA E. PHILLIPS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

YOTAM BARKAI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10118
(212) 373-3000

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

—v.—

MICHAEL HILL; MICHAEL TUBBS; LEAGUE OF THE SOUTH,

*Defendants-Appellants,*

—and—

JASON KESSLER; RICHARD SPENCER; CHRISTOPHER CANTWELL; JAMES ALEX
FIELDS, JR.; VANGUARD AMERICA; ANDREW ANGLIN; MOONBASE HOLDINGS,
LLC.; ROBERT AZZMADOR RAY; NATHAN DAMIGO; ELLIOTT KLINE,
A/K/A Eli Mosely; IDENTITY EVROPA; MATTHEW HEIMBACH; DAVID MATTHEW
PARROTT, A/K/A Matthew Parrott; TRADITIONALIST WORKER PARTY;
JEFF SCHOEP; NATIONAL SOCIALIST MOVEMENT; NATIONALIST FRONT;
AUGUSTUS SOL INVICTUS; FRATERNAL ORDER OF THE ALT-KNIGHTS;
MICHAEL ENOCH PEINOVICH; LOYAL WHITE KNIGHTS OF THE KU KLUX KLAN;
EAST COAST KNIGHTS OF THE KU KLUX KLAN, A/K/A East Coast Knights of the
True Invisible Empire,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT .......................................................................................2

    I.   This Court's Review Is *De Novo* .................................................2

    II.  The Punitive Damages Cap Does Not Apply In This Hate-Crime Proceeding........................................................................................4

        A.  The Punitive Damages Cap Does Not Apply to Proceedings Involving Virginia's Hate-Crime Statute. ...............................4

        B.  Punitive Damages Awards Are Essential for Deterring Hate Crimes.................................................................................7

    III. If the Punitive Damages Cap Applies, It Applies On a Per-Plaintiff Basis ............................................................................................8

        A.  Original Meaning and General Principles of Joinder Support a Per-Plaintiff Interpretation.......................................................9

        B.  Several Virginia Canons of Statutory Construction Support a Per-Plaintiff Interpretation......................................................14

        C.  Constitutional Avoidance Concerns and Persuasive Authority from Other Jurisdictions Support a Per-Plaintiff Interpretation..........17

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Al-Abood ex rel. Al-Abood v. El-Shamari,*
   217 F.3d 225 (4th Cir. 2000).................................................................. 4, 12, 13

*Andrews v. Ring,*
   585 S.E.2d 780 (Va. 2003)....................................................................5

*Bostock v. Clayton Cnty., Ga.,*
   140 S. Ct. 1731 (2020).........................................................................10

*Casey v. Merck & Co., Inc.,*
   722 S.E.2d 842 (Va. 2012)...................................................................16

*Foster v. Wintergreen Real Est. Co.,*
   81 Va. Cir. 353 (2010) .........................................................................12

*Huffman v. Beverly Cal. Corp.,*
   42 Va. Cir. 205 (1997)...........................................................................7

*Jaffe-Spindler Co. v. Genesco, Inc.,*
   747 F.2d 253 (4th Cir. 1984)..............................................................2, 3

*Lahey v. Johnson,*
   720 S.E.2d 534 (Va. 2012)...................................................................10

*Roe v. Doe,*
   28 F.3d 404 (4th Cir. 1994)..................................................................18

*Salve Regina Coll. v. Russell,*
   499 U.S. 225 (1991) ...............................................................................3

*Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Prot. Sys., Inc.,*
   979 F.2d 980 (4th Cir. 1992).................................................................5

*Wright v. Eli Lilly & Co.,*
   66 Va. Cir. 195 (2004) .........................................................................16

**Statutes**

28 U.S.C. § 1291 ................................................................2

Va. Code § 8.01 ...............................................................11

Va. Code § 8.01-38.1 ................................................. passim

Va. Code § 8.01-42.1 .................................................. 1, 6, 8, 11

Va. Code § 8.01-267.1 ................................................. 15, 16

Va. Code § 8.01-267.5 ................................................. 11, 15

Va. Code § 8.01-272 ......................................................11

Va. Code § 8.01-581.15 ..................................................11

Va. Code § 8.01-655 ......................................................10

**Rules**

Federal Rule of Appellate Procedure 12.1 ................................2

**Other Authorities**

1987 Va. Acts 1767.........................................................6

2019 Va. Acts 2727.........................................................6

Restatement (Second) of Torts § 908 (1979)............................8

## PRELIMINARY STATEMENT

Statutory text, purpose, and history unmistakably demonstrate that Virginia's statutory punitive damages cap, Va. Code § 8.01-38.1, does not apply to this proceeding involving Virginia's hate-crime statute, Va. Code § 8.01-42.1. Even assuming the cap applied, a multitude of considerations make clear that it limits recovery in each Plaintiff's substantively separate "action" (*i.e.*, on a per-plaintiff basis)—not across the entire proceeding in which those individual actions are joined.

Defendants' scattershot counterarguments convey a total lack of understanding of Virginia law and history. But their response is perhaps most revealing for what it does not address. Defendants concede that the punitive damages cap's insurer-focused purpose is not implicated here. They do not even attempt to engage with the cap's original meaning. They offer no answer to the constitutional concerns raised by their interpretation of the cap. They overlook persuasive authority interpreting analogous statutes in other states. And they omit any mention of canons of statutory interpretation that seriously undercut their position. Unable to address these considerations, Defendants resort to mischaracterizing state law and misdescribing Plaintiffs' arguments.

At bottom, Defendants fall dramatically short of explaining why Virginia's punitive damages cap should insulate them from a full reckoning for their racist and antisemitic violence. Defendants' (and the district court's) unprecedented

interpretation of the cap remains inconsistent with the statute's text, its animating purpose, subsequent legislation, applicable principles of Virginia law, common sense, and persuasive authority from other jurisdictions. This Court should therefore reverse the district court's reduction of the jury's punitive damages award.[1]

## ARGUMENT

## I.    THIS COURT'S REVIEW IS *DE NOVO*

As an initial matter, Defendants attempt to water down this Court's standard of review. They assert for the first time that the district court's misapplication of the punitive damages cap is entitled to "substantial deference," citing a four-decade-old footnote. Reply/Response Brief of Defendants-Appellants/Cross-Appellees ("Defs.' Br.") at 5, *Sines v. Kessler*, No. 23-1119 (L) (4th Cir. filed July 24, 2023) (quoting *Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253, 257 n.5 (4th Cir. 1984)). This assertion is triply wrong. Defendants' plea for deference is flatly inconsistent with

---

[1] On June 26, 2023, the district court issued an indicative ruling confirming that it had fully and finally disposed of all claims through its final judgment dated January 9, 2023. ECF 1672; *see* J.A. 4865-4868; Opening/Response Brief of Plaintiffs-Appellees/Cross-Appellants ("Pls.' Br.") at 17-18 n.5, *Sines v. Kessler*, No. 23-1119 (L) (4th Cir. filed June 23, 2023). This Court therefore has jurisdiction over the appeals from that final judgment, *see* 28 U.S.C. § 1291, and no remand is necessary. Plaintiffs alerted the Fourth Circuit Clerk's Office of the district court's indicative ruling on June 28, 2023, and were advised that mentioning the indicative ruling in this Reply Brief would satisfy Plaintiffs' obligations under Federal Rule of Appellate Procedure 12.1(a).

their own briefing, the authority on which they rely, and intervening Supreme Court precedent.

*First*, it is black letter law that federal appellate courts review questions of state law *de novo*. *See, e.g.*, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). Defendants know this: They raise an issue of state law in their own appeal, and they have explained that "[t]he standard of review . . . is de novo." *See* Brief of Appellants ("Defs.' Opening Br.") at 4, *Sines v. Kessler*, No. 23-1119 (L) (4th Cir. filed Apr. 24, 2023). That suffices to end the matter.

*Second*, even setting aside Defendants' about-face, their cited authority only purports to call for deference in "diversity case[s]." *Jaffe-Spindler Co.*, 747 F.2d at 257 n.5. As Defendants admit, this is a federal question case, *see* Defs.' Opening Br. 1, rendering their authority inapt on its own terms.

*Lastly*, the Supreme Court abrogated Defendants' logic (even as to diversity cases) in 1991. *See Salve Regina Coll.*, 499 U.S. at 233-34 ("Nothing about the exercise of diversity jurisdiction . . . warrants departure from a rule of independent appellate review."). Likely for that reason, this Court has not cited *Jaffe-Spindler Co.* since the 1980s.

At bottom, Defendants cannot avoid scrutiny of the district court's errors by hiding behind an uber-deferential standard of review. As this Court explained in

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 237 (4th Cir. 2000), "[t]he

proper application of" Va. Code § 8.01-38.1 "is subject to de novo review."

## II.   THE PUNITIVE DAMAGES CAP DOES NOT APPLY IN THIS HATE-CRIME PROCEEDING

The text, purpose, and history of Virginia's punitive damages cap establish

that the cap does not apply in proceedings involving the hate-crime statute. *See* Pls.'

Br. 21-28; Brief of the Human Rights Campaign Foundation, the Southern Poverty

Law Center, and Legal Aid Justice Center ("Civil Rights Orgs.' Br.") at 12-15, *Sines*

*v. Kessler*, No. 23-1119 (L) (4th Cir. filed June 30, 2023). Defendants concede that

the cap's insurer-focused purpose is not implicated in this appeal. Defs.' Br. 5 n.4.

Despite that fatal concession, they insist that the cap shields them from full

accountability for the brutal race-based and religion-based harassment and violence

they planned, coordinated, and perpetrated in Charlottesville. Defendants raise two

arguments in support of this claim: (1) that Plaintiffs' interpretation "has already

been considered and rejected" by a Virginia court, and (2) that punitive damages

awards are unnecessary for the enforcement of civil rights. Defs.' Br. 7. Both are

meritless.

### A.   The Punitive Damages Cap Does Not Apply to Proceedings Involving Virginia's Hate-Crime Statute.

Defendants contend that "at least one Virginia Court" has already "considered

and rejected" Plaintiffs' interpretation of the punitive damages cap. Defs.' Br. 7.

That contention is frivolous. No court (save for the district court) has ever held that the cap applies to proceedings involving Virginia's hate-crime statute.

In arguing otherwise, Defendants blatantly mischaracterize Plaintiffs' position. Plaintiffs have never suggested that "civil rights groups are not subject to laws regarding damages caps" or that "their cases are special and so entitled to special treatment." *Id*. Rather, as Plaintiffs and *amici* have explained, the text, purpose, and history of the punitive damages cap all confirm that the Virginia General Assembly never intended the cap to cover proceedings involving violations of the hate-crime statute. *See* Pls.' Br. 26; Civil Rights Orgs.' Br. 4-5, 12-13.

Take, for instance, the statutory text, which demonstrates that the General Assembly was concerned with punitive damages awards in "action[s] for medical malpractice" and similar torts. Va. Code § 8.01-38.1; *see Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003) (discussing the *noscitur a sociis* principle of statutory interpretation); Pls.' Br. 22. The cap's purpose and enactment history further illustrate that the General Assembly sought to address a particular mischief: unpredictable punitive damages awards that destabilized the insurance industry and, in turn, the state's economy. *See* Pls.' Br. 24 (collecting sources); *Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Prot. Sys., Inc.*, 979 F.2d 980, 984-85 (4th Cir. 1992) (acknowledging that a central "goal" of the punitive damages cap was addressing payouts that "burden[ed] the state's economy," citing a General

Assembly joint subcommittee report on "the Liability Insurance Crisis and the Need for Tort Reform"). Tellingly, Defendants expressly concede that this appeal does not implicate the General Assembly's clear focus on ensuring stability for insurers. *See* Defs.' Br. 5 & n.4.

The broader context of Virginia law makes the General Assembly's policy choice clearer still. On multiple occasions, the General Assembly has singled out hate crimes as being of tremendous concern. *See, e.g.*, 2019 Va. Acts 2727; Civil Rights Orgs.' Br. 7. Most notably, in 1987—the same year the General Assembly passed the punitive damages cap—it commissioned a subcommittee to research the growing problem of "violence motivated by racial, ethnic, or religious hatreds." 1987 Va. Acts 1767. And to address this problem, when the General Assembly passed the hate-crime statute a year later, it specifically provided that prevailing plaintiffs "shall be entitled to . . . punitive damages." Va. Code § 8.01-42.1(B); *see* Pls.' Br. 26. This series of enactments proves that the General Assembly did not intend for hate crimes to be subject to the punitive damages cap.[2]

Defendants do not address this wall of evidence. Instead, they assert that one Virginia trial court decision rejects Plaintiffs' reading of the punitive damages cap.

---

[2] Defendants also seem to suggest that Plaintiffs invite an inquiry into whether a given tortfeasor holds "racist" beliefs. Defs.' Br. 4. That is false. As Defendants know well, Virginia's hate-crime statute imposes liability for certain enumerated "acts," Va. Code § 8.01-42.1(A); it does not punish individuals for racist beliefs.

*See* Defs.' Br. 7 (citing *Huffman v. Beverly Cal. Corp.*, 42 Va. Cir. 205, 211-12 (1997)). But *Huffman* did no such thing. That case did not even involve the hate-crime statute. Instead, *Huffman* involved tort and contract claims against several corporate defendants, who collectively operated a nursing home, as well as an individual employee. *See* 42 Va. Cir. at 205-06. Such a proceeding (unlike this one) falls squarely within the heartland of the punitive damages cap's focus on insurers and run-of-the-mill claims that affect the state's economy, and it surely does not implicate the General Assembly's particular concern for hate crimes.

Defendants thus fail to identify any case aside from this one in which a court has held that the punitive damages cap applies in proceedings involving Virginia's hate-crime statute—and Plaintiffs are aware of none. That silence is as conspicuous as it is unsurprising. The cap does not apply here, and this Court should reverse.

**B.     Punitive Damages Awards Are Essential for Deterring Hate Crimes.**

Defendants also opine that awards of compensatory damages and attorneys' fees suffice to deter commission of hate crimes, such that punitive damages are unnecessary. *See* Defs.' Br. 7. As a threshold matter, Defendants' self-serving assessment of the deterrent effect of punitive damages is immaterial. And in any event, their claim flies in the face of law and experience.

It is a fundamental principle of tort law that "[p]unitive damages are . . . awarded against a person to punish him for his outrageous conduct and to deter him

and others like him from similar conduct in the future." Restatement (Second) of Torts § 908 (1979). Compensatory damages and attorneys' fees alone are insufficient to further these important purposes. Unlike punitive damages awards, compensatory damages and fee awards simply reimburse plaintiffs for their direct injuries and costs; they do not allow juries to ensure that hateful individuals and groups are deterred from future violent acts. Indeed, *amici* civil rights organizations persuasively explain that, based on their extensive experience, punitive damages awards have played a vital role in addressing and deterring hate crimes and other civil rights violations. *See* Civil Rights Orgs.' Br. 9-11, 14-15. The General Assembly that enacted Virginia's hate-crime statute plainly understood as much, which is why it commanded that prevailing plaintiffs "shall be entitled to . . . punitive damages." Va. Code § 8.01-42.1(B).

The General Assembly's decision to ensure a special remedy for prevailing plaintiffs under the hate-crime statute is consistent with its decision to limit the punitive damages cap to the commonplace torts for which that cap was enacted. In accordance with these legislative determinations, the Court should reverse this portion of the judgment.

## III.   IF THE PUNITIVE DAMAGES CAP APPLIES, IT APPLIES ON A PER-PLAINTIFF BASIS

Even if the statutory punitive damages cap applied to this proceeding, it surely would not apply in as sweeping a manner as Defendants claim. Defendants try to

sidestep the central issue in this cross-appeal: the meaning of the term "action" as the General Assembly used it in the cap. The statute specifically provides that "[i]n any action," punitive damages may not "exceed $350,000." Va. Code § 8.01-38.1. Original meaning, principles of joinder, canons of statutory interpretation, constitutional avoidance concerns, and persuasive authority from other states all demonstrate that this use of the term "action" refers to each plaintiff's individual "action"—so if the punitive damages cap applies, it applies on a per-plaintiff basis. *See* Pls.' Br. 28-46.

Tellingly, Defendants fail to engage meaningfully with the term "action." They do not even acknowledge (let alone address) most of these points. And the handful of arguments they do muster are wholly unavailing.

## A.   Original Meaning and General Principles of Joinder Support a Per-Plaintiff Interpretation.

At the time Va. Code § 8.01-38.1 was enacted, the General Assembly could only have used the term "action" to refer to an individual plaintiff's action, not an overall proceeding that spanned multiple plaintiffs. That is because when the cap became law in 1987, joinder of plaintiffs in a single proceeding was not permitted under Virginia law, so even plaintiffs alleging the same claims against the same defendants had to bring separate lawsuits. Given this historical context, it was impossible for the term "action" in the statutory cap to refer to multiple plaintiffs in the Commonwealth's courts. *See* Pls.' Br. 31-33; Brief of Virginia Law Professors

9

("Law Professors' Br.") at 7-8, *Sines v. Kessler*, No. 23-1119 (L) (4th Cir. filed June 30, 2023). Defendants completely fail to engage with the original meaning of the word "action." They do not and cannot dispute that in Virginia, when the punitive damages cap was enacted, "action" did not mean what they insist it means now. This alone justifies reversal of the district court's sweeping application of the punitive damages cap to reduce the jury's verdict. *See, e.g.*, *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1750 (2020) (even where a statute's plain meaning has changed over time, "the law's ordinary meaning at the time of enactment usually governs").

Having cast aside original meaning, Defendants instead proclaim that the cap's reference to an "action," stripped of context, unambiguously covers the entirety of a proceeding in which several plaintiffs' separate actions have been joined. Defs' Br. 3. But Defendants stubbornly refuse to engage with the full context of Virginia law, even as it stands today.[3] In truth, the General Assembly has more often than not used "action" to denote an individual plaintiff's action. *See* Pls.' Br.

---

[3] Defendants' own citations undercut their exhortations that Va. Code § 8.01-38.1 unambiguously means what they say it does. For instance, Defendants cite *Lahey v. Johnson*, 720 S.E.2d 534, 537 (Va. 2012), for the proposition that unambiguous statutes must be interpreted in accord with their clear meaning. *See* Defs.' Br. 3. But in *Lahey*, the question was whether a state-law habeas petition counted as filed before court costs were paid, and the relevant statute expressly directed that a habeas petition "will not be filed without payment of court costs." 720 S.E.2d at 536-37 (quoting Va. Code § 8.01-655(B)). Here, by contrast, the punitive damages cap uses a term ("action") that, even today, "usually means a single plaintiff" under Virginia law. Law Professors' Br. 7-8.

10

30-31. And that is precisely how the General Assembly used the word "action" in Va. Code § 8.01-38.1.

Resisting that straightforward conclusion, Defendants hang their hat on one phrase in one statute (part of the Multiple Claimant Litigation Act) that describes the joined actions of six or more plaintiffs as "a single action." Defs.' Br. 6 (quoting Va. Code § 8.01-267.5) (emphasis removed); *see also* Pls.' Br. 31 (quoting and discussing this language). Remarkably, Defendants decline to mention the very next sentence of the statute, which refers instead to "the actions" (plural) "so joined." Va. Code § 8.01-267.5; *see* Pls.' Br. 31. Defendants also ignore several other provisions of Virginia law that further reinforce that "action" in the punitive damages cap refers to the action of each individual plaintiff. For instance, Defendants fail to address the fact that Virginia's hate-crime statute (Va. Code § 8.01-42.1), claim-joinder statute (Va. Code § 8.01-272), and statutory medical malpractice cap (Va. Code § 8.01-581.15) all support a per-plaintiff reading of the punitive damages cap. Indeed, as Plaintiffs explained in their principal brief, the hate-crime and claim-joinder statutes link an "action" to an individual "person" or "party," and the medical malpractice cap, which limits "the total amount" recoverable in an "action" for medical malpractice, applies on a per-plaintiff basis. *See* Pls.' Br. 30-31.

Defendants next latch onto the punitive damages cap's reference to "the total amount" of punitive damages as proof that the cap should reach across all plaintiffs

in a joined or consolidated proceeding. Defs.' Br. 3-4 (quoting Va. Code § 8.01-38.1). But that interpretation writes the word "action" out of the statute. The cap specifically limits "the total amount awarded for punitive damages" "*[i]n any action*." Va. Code § 8.01-38.1 (emphasis added). And because the word "action" refers to an *individual* plaintiff's "action," *see supra* pp. 9-11; Pls.' Br. 29-35, the cap by its terms restricts the "total amount awarded . . . against all defendants" only "[i]n" each plaintiff's "action"—not the total amount awarded across all actions of all plaintiffs. *Id.*

For the same reason, Defendants' reliance on the statutory language "in no event" is equally misplaced. Defs.' Br. 4 (quoting Va. Code § 8.01-38.1). That cherry-picked phrase provides scant support for Defendants' claim that the cap imposes a single $350,000 cap for all plaintiffs in a single proceeding. After all, under a per-plaintiff interpretation, "[i]n no event" will the total amount of punitive damages awarded "[i]n any action" ever exceed $350,000. Va. Code § 8.01-38.1.

Defendants further assert that this Court and a Virginia trial court have already held that the punitive damages cap unambiguously applies across all plaintiffs. Defs.' Br. 3 (citing *Al-Abood*, 217 F.3d at 237; *Foster v. Wintergreen Real Est. Co.*, 81 Va. Cir. 353, 363-64 (2010)). Not so. As Defendants acknowledge, both *Al-Abood* and *Foster* addressed only whether the cap—which expressly limits "the total amount awarded for punitive damages against all defendants," Va. Code § 8.01-

38.1—applies across all defendants. *See* Defs.' Br. 3. As the statutory text, general principles of joinder, and the particular context of Virginia law establish, the per-plaintiff question is entirely different. *See* Pls.' Br. 34-35, 45-46. No surprise, then, that this Court expressly reserved judgment on whether the cap applies on a per-plaintiff basis in *Al-Abood*. *See* 217 F.3d at 237 n.10.

Finally, Defendants make the puzzling assertion that "even if the parties were improperly 'misjoined,' Virginia law allows that defect to be waived." Defs.' Br. 6. Whether misjoinder is waivable under Virginia law is beside the point. Principles of joinder, both within and beyond Virginia, are relevant specifically because they illuminate the proper construction of the term "action" as the General Assembly used that term in 1987 when it passed the punitive damages cap. *See* Pls.' Br. 32-35. No party or *amicus* argues that the parties are misjoined in this federal court proceeding, and in all events, any such defect (even if waivable) would not and could not change the meaning and scope of the statutory cap.

Defendants ultimately provide no reason to depart from the original meaning of Va. Code § 8.01-38.1. Because "action" in the context of this statute refers to an individual plaintiff's substantively separate action, the punitive damages cap applies only on a per-plaintiff basis (if it applies at all).

**B.      Several Virginia Canons of Statutory Construction Support a Per-Plaintiff Interpretation.**

State-law canons of statutory interpretation also firmly support a per-plaintiff reading of the punitive damages cap. *See* Pls.' Br. 35-40. Defendants fail to acknowledge, let alone address, Virginia's longstanding rule against surplusage and related prohibition on adding statutory language the General Assembly did not include, both of which favor a per-plaintiff interpretation. *See id.* at 35-36. Indeed, if the General Assembly had intended the cap to apply across all plaintiffs, it could have capped the amount of punitive damages awarded "to all plaintiffs"—just as it did when it specified that the $350,000 cap applies to the "total amount" against "all defendants." *Id.* at 36.

Virginia's longstanding mischief rule bolsters this conclusion. Although Defendants concede that this appeal does not implicate the insurance-related concerns animating the punitive damages cap, they nonetheless assert that a per-plaintiff interpretation of the cap would not advance the enacting General Assembly's goals. *See* Defs.' Br. 5 & n.4. Defendants are wrong again. The mischief rule supports construing statutes neither more broadly nor more narrowly than is necessary to accomplish their purpose. *See* Pls.' Br. 23. To be sure, the enacting General Assembly sought to avoid burdening the state's economy. But its purpose was not to bluntly "protect insurance companies" from *all* liability at all costs, as Defendants mistakenly insist. Defs.' Br. 5. Instead, the General Assembly sought to

14

achieve *stability* in the insurance industry by avoiding runaway damages awards and enabling insurers to estimate potential claims more reliably. *See* Pls.' Br. 24-25. A per-plaintiff cap thus squarely addresses the mischief that the General Assembly intended to remedy: It enables insurers to estimate possible claims in reliance on the guarantee that each injured claimant's punitive damages award will be capped at $350,000.[4]

Lastly, Defendants fail to address the absurd results that would flow from their reading of the punitive damages cap, except to note that modern Virginia law permits joinder or consolidation of the actions of six or more plaintiffs (but not five or fewer plaintiffs). *See* Defs.' Br. 5 & n.3; Va. Code §§ 8.01-267.1, 8.01-267.5. That is a baffling non-sequitur. Discretionary tools like joinder and consolidation do nothing to remedy the many complications and perverse incentives that would flow from Defendants' (and the district court's) view of the cap. Under that flawed interpretation of the statute, plaintiffs would be motivated to litigate their actions separately—not join them—and dig in their heels against consolidation, in direct

---

[4] Even if the General Assembly had acted to "protect insurance companies and therefore keep premiums down" generally, Defs.' Br. 5, Defendants' interpretation would hardly achieve that goal. Under Defendants' reading of the punitive damages cap, future plaintiffs would have every incentive to litigate their actions separately and frustrate efforts at consolidation. *See* Pls.' Br. 37-40. The resultant volume of redundant litigation would overwhelm insurance companies, which would be tasked with litigating or settling a far greater number of separate proceedings.

conflict with settled state policy favoring efficient adjudication of disputes. *See* Pls.'
Br. 37-40; *Wright v. Eli Lilly & Co.*, 66 Va. Cir. 195, 224 (2004).

Nor do Defendants explain how, under their construction of the punitive
damages cap, a judge should adjudicate a motion to consolidate when multiple
plaintiffs seek punitive damages in actions arising out of the same series of events.
*See* Pls.' Br. 39. In those circumstances, would it "promote the ends of justice" to
consolidate several actions when doing so would advance judicial economy but
abridge the plaintiffs' substantive rights to the tune of millions of dollars by
operation of the cap? Va. Code § 8.01-267.1(3). Or are separate proceedings, though
dramatically less "efficient," more "just" in that scenario? *Id.* Will the answers vary
based on the facts of each case? Defendants do not say.[5]

Instead of confronting the bizarre and confusing consequences of their
interpretation, Defendants conjure up a supposed absurdity of their own: What about
class actions? *See* Defs.' Br. 4. But Virginia law "does not recognize class actions."
*Casey v. Merck & Co., Inc.*, 722 S.E.2d 842, 846 (Va. 2012). Even with respect to
proceedings in federal court, Defendants' argument falls flat. Defendants do not
articulate a single practical complication that would arise under a per-plaintiff

---

[5] Defendants also fail to acknowledge that their reading of the punitive damages cap
would generate different outcomes in state and federal courts and thereby incentivize
forum-shopping—particularly in disputes involving two to five plaintiffs, whose
actions could be consolidated in federal courts but not state courts. *See* Pls.' Br. 33
n.10; Law Professors' Br. 12-15.

application of the punitive damages cap in a hypothetical class action in federal court arising under Virginia law. In such a case, the cap would simply limit each identifiable class member's entitlement to punitive damages to $350,000. In sum, only a per-plaintiff interpretation of the cap—not Defendants' unworkable multi-plaintiff reading—avoids absurd results, as Virginia law requires.

### C.   Constitutional Avoidance Concerns and Persuasive Authority from Other Jurisdictions Support a Per-Plaintiff Interpretation.

A per-plaintiff construction of Va. Code § 8.01-38.1 is also necessary to avoid the serious equal protection problems that arise from arbitrarily disadvantaging plaintiffs suing jointly as compared to plaintiffs suing separately. *See* Pls.' Br. 40-42. And a per-plaintiff interpretation accords with how the courts of other states, including Georgia, North Carolina, Alabama, and Massachusetts, have interpreted comparable state statutes—often for the reasons described above. *See* Pls.' Br. 42-44. Once again, Defendants provide no response and cite no countervailing authority on either of these points. Because these considerations (alongside original meaning, general principles of joinder, and interpretive canons) powerfully support a per-plaintiff reading of the punitive damages cap, this Court should at minimum hold that the cap applies on a per-plaintiff basis.[6]

---

[6] Perhaps recognizing that existing authority does not favor their position, Defendants propose that this Court certify the question of whether and how the cap applies to the Supreme Court of Virginia. *See* Defs.' Br. 10. Plaintiffs respectfully

**CONCLUSION**

For the foregoing reasons, the district court's application of the punitive damages cap to reduce the jury's verdict, as well as its refusal to assess additional punitive damages against the defaulted Defendants, should be reversed. The Court should affirm that Appellants are jointly and severally liable on the compensatory damages awarded by the jury on Counts IV and V.

---

submit that existing authority, as outlined above and in their principal brief, more than suffices to reverse the district court's application of the punitive damages cap without resort to certification. *See Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) ("Only if the available state law is clearly insufficient should the court certify the issue to the state court.").

Respectfully submitted,

August 21, 2023                    /s/ Raymond P. Tolentino

David E. Mills                     Raymond P. Tolentino
Joshua M. Siegel                   KAPLAN HECKER & FINK LLP
Caitlin B. Munley                  1050 K Street, NW, Suite 1040
Robby L.R. Saldaña                 Washington, DC 20001
Khary J. Anderson                  (212) 763-0883
COOLEY LLP                         rtolentino@kaplanhecker.com
1299 Pennsylvania Avenue, NW, Suite
     700                           Roberta A. Kaplan
Washington, DC 20004               Gabrielle E. Tenzer
(202) 842-7800                     KAPLAN HECKER & FINK LLP
dmills@cooley.com                  350 Fifth Avenue, 63rd Floor
                                   New York, New York 10118
Alan D. Levine                     (212) 763-0883
COOLEY LLP                         gtenzer@kaplanhecker.com
55 Hudson Yards
New York, New York 10001           Karen L. Dunn
(212) 479-6000                     Jessica E. Phillips
alevine@cooley.com                 PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP
                                   2001 K Street, NW
                                   Washington, DC 20006
                                   (202) 223-7300
                                   kdunn@paulweiss.com

                                   Yotam Barkai
                                   PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP
                                   1285 Avenue of the Americas
                                   New York, New York 10118
                                   (212) 373-3000
                                   ybarkai@paulweiss.com

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

19

## CERTIFICATE OF COMPLIANCE

I, Raymond P. Tolentino, counsel for Plaintiffs-Appellees/Cross-Appellants and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1), that the attached Reply Brief of Plaintiffs-Appellees/Cross-Appellants is proportionately spaced, has a typeface of 14 points or more, was prepared using Word for Microsoft 365, and contains 4,308 words.

/s/ Raymond P. Tolentino
Raymond P. Tolentino


Dated: August 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I served the following via ECF:

David L. Campbell
Justin Saunders Gravatt
Duane, Hauck, Davis & Gravatt, P.C.
100 West Franklin Street, Suite 100
Richmond, VA 23220
dcampbell@dhdglaw.com
jgravatt@dhdglaw.com

*Counsel for Cross-Appellee James A.
Fields, Jr.*

Elmer Woodard
5661 US Hwy 29
Blairs, VA 24527
isuecrooks@comcast.net

James E. Kolenich
Kolenich Law Office
9435 Waterstone Blvd. #140
Cincinnati, OH 45249
JIM@TradLawyer.com

*Counsel for Cross-Appellees Nathan
Damigo and Identity Europa, Inc.
(Identity Evropa)*

Joshua Smith
Smith LLC
807 Crane Avenue
Pittsburgh, PA 15216-2079
joshsmith2020@gmail.com

*Counsel for Cross-Appellees Matthew
Heimbach, Matthew Parrott, and
Traditionalist Worker Party*

Bryan Jones
106 W. South St., Suite 211
Charlottesville, VA 22902
bryan@bjoneslegal.com

*Counsel for Cross-Appellees Michael
Hill, Michael Tubbs, and League of the
South*

William Edward ReBrook, IV
The ReBrook Law Office
6013 Clerkenwell Court
Burke, VA 22015

1420 Cardinal Road
Charleston, WV 25314
edward@rebrooklaw.com
rebrooklaw@gmail.com

*Counsel for Cross-Appellees Matthew
Heimbach, Matthew Parrott,
Traditionalist Worker Party, National
Socialist Movement, and Nationalist
Front*

I further hereby certify that on August 21, 2023, I also served the following via electronic mail:

Christopher Cantwell
christopher.cantwell@gmail.com

I further hereby certify that on August 21, 2023, I caused to be served the following by physical mail:[7]

Jason Kessler
6256 Bullet Dr.
Crestview, FL 32536

1100 Wythe Street, Unit 1812
Alexandria, VA 22313

Vanguard America
c/o Dillon Hopper
383 Hazzard Street
Scottsburg, IN 47170

Robert "Azzmador" Ray
22345 Cherry Lane
Frankston, TX 75763

Moonbase Holdings, LLC
c/o Andrew Anglin
6827 N. High Street, Ste. 121
Worthington, OH 43085

P.O. Box 208
Worthington, OH 43085

Richard Spencer
734 Clearwater Drive
Whitefish, MT 59937

Elliott Kline a/k/a Eli Mosley
117 Mesa Drive
Reading, PA 19608

---

[7] In addition to the herein-described service via U.S. mail and electronic mail, Plaintiffs-Appellees/Cross-Appellants served the brief to the following Defendants who have not consented to service via electronic mail: Elliott Kline (eli.f.mosley@gmail.com; deplorabletruth@gmail.com; eli.r.kline@gmail.com); Jeff Schoep (commander@newsaxon.com; commander@newsaxon.org); Richard Spencer (richardbspencer@icloud.com; richardbspencer@gmail.com); Robert Ray (azzmador@gmail.com); and Vanguard America c/o Dillon Hopper (dillon_hopper@protonmail.com).

Jeff Schoep
PO Box 66335
Roseville, MI 48066

East Coast Knights of the Ku Klux
Klan
a/k/a East Coast Knights of the True
Invisible Empire
26 South Pine St.
Red Lion, PA 17356

Fraternal Order of the Alt-Knights
c/o Kyle Sean Chapman
52 Lycett Circle
Daly City, CA 94015

Augustus Sol Invictus
424 E. Central Blvd #156
Orlando, FL 32801

Loyal White Knights of the Ku Klux
Klan
c/o Chris and Amanda Barker
2364 US Highway 158 E
Yanceyville, NC 27379

*/s/* Raymond P. Tolentino
Raymond P. Tolentino

Dated: August 21, 2023